**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Yorby Jose BRITO RIVERO,<br><br>Petitioner,<br><br>v.<br><br>LEONARD ODDO, *et al*.<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 3:26-cv-776<br>Judge Nora Barry Fischer<br><br>Docket No. 6 |

**MEMORANDUM OPINION**

## I. INTRODUCTION

Petitioner, Yorby Jose Brito Rivero, is a Venezuelan national who has sought *habeas corpus* relief from his detention by U.S. Immigration and Customs Enforcement ("ICE") predicated on an asserted (i) right to a bond hearing under 8 U.S.C. § 1226(a) (and its implementing regulations); (ii) Temporary Protected Status ("TPS") under 8 U.S.C. § 1254a; and (iii) right to pre-detention notice and hearing due to his prior humanitarian parole under 8 U.S.C. § 1182(d)(5). The factual and procedural background of this action are summarized in this Court's May 18, 2026 Memorandum Opinion and Order (the "May 18 Order") (Docket No. 15). Therein, the Court ruled that Petitioner's detention is governed by § 1226(a), which permits release on bond pending completion of removal proceedings, rather than by 8 U.S.C. § 1225(b), which does not;[1] and accordingly directed Respondents ("the Government") to provide Petitioner a prompt bond hearing "conducted by a neutral adjudicator . . . apply[ing] all procedural safeguards ordinarily required

[1] The Court's ruling on this issue was subsequently validated by the Court of Appeals for the Third Circuit. *See Buele Morocho v. Warden Philadelphia FDC*, 2026 WL 2546223 (3d Cir. Aug. 28, 2026).

by due process". The May 18 Order expressly reserved decision of Petitioner's claims for "immediate release on the basis of his TPS or humanitarian parole" and directed the parties to file supplemental briefing on specified issues relating to those claims.

Following entry of the May 18 Order, Petitioner received a bond hearing on May 27, 2026 before a Department of Homeland Security ("DHS") Immigration Judge ("IJ"), in which release on bond was denied because Petitioner was found to pose a flight risk.[2] (Docket Nos. 19-1, 19-2). The parties filed supplemental briefing between early June and late September. (Docket Nos. 18-19, 23-25).

The issues reserved being ripe for decision, the Court proceeds as below.

## II. ANALYSIS

### A. Petitioner Is Not Entitled to Collateral Estoppel

#### 1. Temporary Protected Status

On October 3, 2023 DHS "re-designated" Venezuela for TPS, for an 18-month term commencing that day and ending on April 2, 2025. 88 Fed. Reg. 68130. On January 17, 2025, DHS extended Venezuela's 2023 TPS designation for 18 months, through October 2, 2026. 90

---

[2] The IJ ruled from the bench:

> The court finds that the evidence in this matter is insufficient to indicate or establish that the respondent is a danger to the community. . . . . However, the court does find that the respondent is a flight risk and the court will set no bond . . .

(Docket No. 19-1 at 8). The IJ's form Order, inconsistently, indicated that

> [T]he respondent's request for a change in custody status is . . .
>
> Denied, because
>
> 1. The Respondent is a danger to the community.
>
> 2. The Respondent is a flight risk.

(Docket No. 19-2 at 2). The Court notes that "respondent" in the bond hearing transcript and Order refers to Petitioner herein.

The IJ stated from the bench that Petitioner had until "no later than June 26, 2026" to file a notice of appeal to the Board of Immigration Appeals; whereas the Order states "Appeal Due: 06/29/26". In either case, the record before this Court does not indicate that Petitioner has filed an appeal from the IJ's denial of bond.

Fed. Reg. 5961. On February 3, 2025 a new administration at DHS issued a vacatur of the January 17, 2025 extension. 90 Fed. Reg. 8805. And on February 5, 2025 DHS terminated the 2023 TPS designation for Venezuela. 90 Fed. Reg. 9041. *See generally National TPS Alliance v. Noem*, 166 F.4th 739, 750-52 (9th Cir. 2026).

On March 14, 2024 Petitioner was granted individual TPS under Venezuela's 2023 designation. (Docket No. 6 at 5). By statute, a non-citizen with TPS "shall not be detained" on the basis of immigration status. 8 U.S.C. § 1254a(d)(4). Although an individual's TPS is subject to withdrawal if he fails to register annually with DHS,[3] and Petitioner did not timely do so,[4] the TPS granted remains in effect until it is withdrawn by DHS following notice giving 30 days "to provide evidence of good cause for failure to register". 8 C.F.R. § 244.14(b)(1). Here, the Government concedes that it "is not aware of such notice being provided to Petitioner". (Docket No. 18 at 4).

However, the Government contends that Petitioner's TPS ended on April 7, 2025 (60 days after February 5, 2025), which it asserts to be the effective date of its termination of Venezuela's TPS designation. *Cf.* 8 U.S.C. § 1254a(b)(3)(B) (providing that termination of TPS designation as to a foreign state "shall not be effective earlier than 60 days after the date the notice is published or, if later, the expiration of the most recent previous extension").[5]

**2. The California Action**

On September 5, 2025, the United States District Court for the Northern District of California (the "*NTPSA* District Court") granted partial summary judgment pursuant to the

[3] *See* 8 U.S.C. § 1254a(c)(3)(c) 8 C.F.R. § 244.14(a)(3).

[4] (Docket No. 6 at 6).

[5] The Government concedes that "[i]f the January 17, 2025, extension had remained in place, the termination would not have taken effect until the conclusion of that extension, on October 2, 2026." (Docket No. 18 at 4 n.2).

Administrative Procedure Act ("APA"), setting aside DHS's vacatur of the January 17, 2025 extension and its termination of Venezuela's TPS designation. *National TPS Alliance v. Noem*, 798 F. Supp. 3d 1108 (N.D. Cal. 2025). The Supreme Court granted a stay of the district court's set aside order on October 3, 2025. *Noem v. National TPS Alliance*, 146 S. Ct. 23 (2025). On December 10, 2025, the NTPSA District Court entered a declaratory judgment finding the vacatur and termination to be invalid, based on the same reasoning underlying the Court's September 5, 2025 set aside order. *National TPS Alliance v. Noem*, 2025 WL 3539156 (N.D. Cal. Dec. 10, 2025) (the "*NTPSA* Declaratory Judgment"). The NTPSA Declaratory Judgment was not stayed.

Petitioner contends that this Court should apply principles of collateral estoppel, or issue preclusion, to the *NTPSA* Declaratory Judgment to conclude that Venezuela's – and hence Petitioner's – TPS remains in effect, so that Petitioner is entitled to immediate release from ICE detention pursuant to § 1254a(d)(4).

**3. Jurisdiction**

The Government's initial argument against collateral estoppel is that the *NTPSA* District Court lacked jurisdiction to review DHS's TPS determinations, and that this Court "is not bound by the judgment of another court entered without jurisdiction." (Docket No. 13 at 6). Petitioner responds by characterizing the Government's objection to the NTPSA District Court's jurisdiction is "at best" a challenge to the "correctness" of the NTPSA Declaratory Judgment, which "cannot be raised" before this Court. (Docket No. 19 at 2 n.1, 3).

In its initial supplemental briefing in the form of Surreply, the Government bases its jurisdictional challenge upon a statutory provision that "[t]here is no judicial review of any determination . . . with respect to the [TPS] designation, or termination or extension of a designation, of a foreign state." 8 U.S.C. § 1254a(b)(5)(A). The Government contends that the "plain text" of § 1254a(b)(5)(A) imposes a "broad prohibition on judicial review of . . . TPS

determinations", including "DHS's revocation of its extension . . . [,] and its termination [,] of Venezuela's TPS designation." (Docket No. 18 at 2). However, the Government suggests that this Court need not reach the issue of its own jurisdiction to review the revocation of the extension, because Petitioner "has not challenged the Secretary's compliance with procedural requirements", but instead has "only argued . . . that [this] Court is bound" by the NTPSA declaratory judgment also finding the revocation invalid. (*Id.* at 2-3).

In his response, Petitioner asserts that "courts are not jurisdictionally barred under 8 U.S.C. § 1254a(b)(5)(A) from reviewing the validity of DHS's vacatur of its extension of Venezuelan TPS and its termination prior to the expiration of the extension for the reasons explained by the *NTPSA* Court." (Docket No. 19 at 2). *See also* Docket No. 14 at 10-11 & n.7 (collecting cases). However, Petitioner agrees with the Government that "this Court need not answer this jurisdictional question in order to adjudicate [his] TPS-related claim because he does not ask the Court to review any TPS determination by the DHS Secretary", but instead desires the Court to apply "preclusive effect" to the *NTPSA* Declaratory Judgment, and thereby "determine that Petitioner retains TPS, and thus Petitioner's detention is unlawful, without any scrutiny of the DHS Secretary's TPS determinations." (Docket No. 19 at 2-3).

Ordinarily, this Court would not be free to accept the parties' joint invitation to refrain from addressing the effect of § 1254a(b)(5)(A) on its own jurisdiction. *Cf. Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) ("[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'") (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). If the statute were determined to deprive the courts of jurisdiction to review the validity of DHS's vacatur

of Venezuela's TPS extension and accelerated termination of TPS, then this Court would lack authority to decide those issues, whether on collateral estoppel or on any other ground.

Moreover, the Court disagrees with Petitioner's contention that whether the *NTPSA* district court had jurisdiction has no bearing on Petitioner's collateral estoppel claim. As the Supreme Court held long ago,

> [I]n order to give any binding effect to a judgment, it is essential that the court should have jurisdiction of the person and the subject matter, and it is equally clear that the want of jurisdiction is a matter that may always be set up against a judgment when sought to be enforced or where any benefit is claimed under it, as the want of jurisdiction makes it utterly void and unavailable for any purpose.

*Earle v. McVeigh*, 91 U.S. 503, 507 (1875) (*cited in* Docket No. 13 at 6). More recently, the Court has incorporated the requirement of the issuing court's jurisdiction in its framing of the doctrine of collateral estoppel: "once an issue is actually and necessarily determined <u>by a court of competent jurisdiction</u>, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation". *Montana v. United States*, 440 U.S. 147, 153 (1979), *quoted in Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231 (3d Cir. 1995) (emphasis added) (cited in Docket No. 14 at 7, 8).

Turning to the merits of the jurisdictional issue, however, the Court finds the district courts' jurisdiction to address DHS's rescission of a TPS extension to be uncertain under applicable precedent. On the one hand, courts presumptively possess such jurisdiction:

> There is a "strong presumption that Congress intends judicial review of administrative action,"[6] and it can only be overcome by a "clear and convincing evidence" that Congress intended to preclude the suit.[7] The presumption is particularly strong that Congress intends judicial review of agency action taken in

[6] *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986).

[7] *Abbott Laboratories v. Gardner*, 387 U.S. 136, 141 (1967) (quoting *Rusk v. Cort*, 369 U.S. 367, 380 (1962)).

> excess of delegated authority.[8] Such review is favored, . . . "if the wording of a preclusion clause is less than absolute."[9]

*Amgen, Inc. v. Smith*, 357 F.3d 103, 111 (D.C. Cir. 2004) (citations moved to footnotes). *See also Leedom*, 358 U.S. at 190 (Courts "cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers."). The Ninth Circuit applied this presumption in concluding that DHS's vacatur of Venezuela's TPS is reviewable notwithstanding the jurisdiction-stripping provisions of § 1254a(b)(5)(A). That Court reasoned that "the scope and extent of statutory authority granted to [DHS] is a first order question that is not a 'determination ... with respect to the designation, or termination or extension' of a country for TPS." *National TPS Alliance*, 166 F.4th at 756. No other Court of Appeals has addressed this precise issue. On October 5, 2026 the Supreme Court granted *certiorari* in *National TPS Alliance*, vacated the Ninth Circuit's judgment, and remanded for further consideration in light of *Mullin v. Doe*, 609 U.S. 324, 146 S. Ct. 2121 (2026). *See Mullin v. Nat. TPS Alliance*, 2026 WL 2976626 (U.S. Oct. 5, 2026).

On the other hand, the text of § 1254a(b)(5)(A)'s jurisdictional bar is quite broad on its face, and the Supreme Court has recently interpreted it broadly (albeit in the context of TPS terminations that were not dependent on vacatur of prior extensions). In *Mullin v. Doe*, the Supreme Court held that § 1254a(b)(5)(A) precludes judicial review of challenges to DHS's decisions to terminate TPS designations for Syria and Haiti. The Court interpreted the phrase "determination . . . with respect to . . . termination" to encompass not only the ultimate decision to terminate a country's TPS, but also "all those steps" – such as consultation with the State

[8] *See Leedom v. Kyne*, 358 U.S. 184, 190 (1958); *Aid Ass'n for Lutherans v. U.S. Postal Service*, 321 F.3d 1166, 1173 (D.C. Cir. 2003).

[9] *Dart v. United States*, 848 F.2d 217, 221 (D.C. Cir. 1988).

Department and assessment of country conditions – which "were part of the process that led to [the] final decision to terminate". *Mullin v. Doe*, 146 S. Ct. at 2134.[10]

In its supplemental briefing herein, the Government contends that in *Mullin v. Doe*, "the Supreme Court held that the TPS statute bars all judicial review of non-constitutional claims related to the Secretary of Homeland Security's determinations with respect to the designation, or termination or extension of a designation, of a foreign state for TPS. In other words, the Court cannot review the legality of DHS's vacatur and termination of Venezuela's TPS designation." (Docket No. 23 at 2-3) (citation omitted). Petitioner counters that *Mullin v. Doe* "had no occasion to consider whether the jurisdiction-stripping provisions of 8 U.S.C. § 1254a(b)(5) applied to challenges to the *vacatur*, as opposed to the *termination*, of a country's TPS designation . . . . . This distinction matters because, while termination of a country's TPS is provided for in the statute, *see* 8 U.S.C. § 1254a(b)(5), vacatur is not." (Docket No. 24 at 2, 4) (italics in original). In view of the foregoing distinction, the Court finds that it is unclear whether *Mullin v. Doe* is controlling in the present case.[11]

While the Court might otherwise be left with a difficult question as to its statutory jurisdiction to decide what will be seen below to be straightforward questions on the merits of Petitioner's remaining claims, as it has previously observed, "[i]n appropriate cases, jurisdictional issues need not be decided where the case could be alternatively decided on the merits in favor of

---

[10] Although *Mullin v. Doe* distinguished *Bowen*, *supra*, it did not overrule or question *Bowen*'s exposition of the longstanding presumption in favor of judicial review of administrative actions. Rather, the *Mullin v. Doe* Court "recognize[d] that when a statutory provision is reasonably susceptible to divergent interpretation, we adopt the reading that accords with the traditional and basic principle that executive determinations generally are subject to judicial review." 146 S. Ct. at 2134 (internal quotation marks and citation omitted). However, the Court found that as to DHS's decision to terminate a country's TSP (upon expiration of the last extension), "the text . . . very clearly overcomes the general presumption in favor of judicial review." *Id.*

[11] Although the Supreme Court concluded in *Mullin v. Doe* that "the TPS statute's judicial-review bar applies to all non-constitutional claims", 146 S. Ct. at 2137, it did so in the context of "consider[ing] *respondents'* non-constitutional claims and conclud[ing] that we are barred from reviewing them." *Id.* at 2133.

the same party." *Hvizdak v. Citizens Bank of Pennsylvania*, 2015 WL 4878639, at *4 n.2 (W.D. Pa. Aug. 6, 2015) (citing *Norton v. Mathews*, 427 U.S. 524, 530–32 (1976)). This principle has been termed the "doctrine of hypothetical jurisdiction". *United States v. Troescher*, 99 F.3d 933, 934 n.1 (9th Cir. 1996). On consideration, the Court finds this to be such an "appropriate case".

Although in *Steel Co. v. Citizens for a Better Env't*, the Supreme Court criticized the doctrine of hypothetical jurisdiction, 523 U.S. 83, 93-94 (1998), the Third Circuit subsequently held that *Steel Co.* did not preclude hypothetical jurisdiction where the jurisdictional question is statutory rather than constitutional. *See Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 415–16 (3d Cir. 2003) ("*Steel Co.* . . . should not be understood as requiring courts to answer all questions of 'jurisdiction,' broadly understood"; "[i]nstead, that case requires courts to answer questions concerning Article III jurisdiction before reaching other questions."). *See also, e.g.*, *Jordon v. Attorney Gen. of U.S.*, 424 F.3d 320, 325 n.8 (3d Cir. 2005) (same, quoting *Bowers*). As recently as this year, a panel of the Third Circuit reaffirmed (in a non-precedential decision) that "a court may exercise hypothetical jurisdiction to reach the merits of a claim when the potential jurisdictional impediments do not raise Article III concerns". *Thornton v. State*, 2026 WL 524685, at *2 (3d Cir. Feb. 25, 2026) (citing *Jordon* and *Bowers*).[12]

Accordingly, the Court concludes that the hypothetical jurisdiction doctrine remains viable in appropriate cases in this Circuit, and that practical and doctrinal considerations call for its application here. And as foreshadowed, assuming that the Court has jurisdiction, it must nevertheless deny further relief to Petitioner for the reasons set forth below.

[12] Moreover, the Supreme Court recently denied *certiorari* with respect to the Second Circuit's embrace of the hypothetical jurisdiction doctrine. *See In re Tronox Inc.*, 2022 WL 16753119, at *1 (2d Cir. Nov. 8, 2022) ("[U]nder our caselaw, 'where a question of statutory (non-Article III) jurisdiction is complex and the claim fails on other more obvious grounds,' we may 'assume hypothetical jurisdiction in order to dismiss on those obvious grounds.'") (quoting *Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 123 (2d Cir. 2020)), *cert. denied sub nom Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP*, 143 S. Ct. 2027 (2023).

**4. Mutuality**

The Government objects that "Petitioner was not personally a party to the California litigation", and that although "Petitioner asserts that he is now a member of National TPS Alliance," he "does not assert that he was a member . . . at the time the California court entered its order on declaratory relief." (Docket No. 13 at 6 n.3).[13] In response, Petitioner argues that (a) "the timing of when an individual acquired membership in an association that is party to a lawsuit is [not] relevant" to mutuality; (b) as a current member Petitioner is "indistinguishable from NTPSA and is considered a party to the NTPSA litigation"; and (c) "[c]ollateral estoppel applies because [Petitioner] is a 'privy' of NTPSA." (Docket No. 14 at 9 & n.6).

Traditionally, "the scope of collateral estoppel was limited by the doctrine of mutuality of parties", under which "neither party could use a prior judgment as an estoppel against the other unless both parties were bound by the judgment." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326-27 (1979) (citation omitted).[14] Here, Petitioner's arguments and authorities do not establish that he would have been bound by the *NTPSA* decision had it gone the other way. In particular, the cases cited by Petitioner do not support the proposition that a person in Petitioner's position (who was eligible to join an association involved in litigation but had not done so at the time of judgment) would be so bound.[15] Rather, Petitioner's authorities consist of one case in which the

[13] The only evidence of record concerning when Petitioner joined the NTPSA is a January 30, 2026 email from NTPSA Staff confirming that Petitioner "is a member in good standing".

[14] *Parklane* eliminated mutuality as a hard-and-fast requirement for collateral estoppel: "The Court in *Parklane* concluded that 'a litigant who was not a party to a prior judgment may nevertheless use that judgment "offensively" to prevent a defendant from relitigating issues resolved in the earlier proceeding,' subject to an overriding fairness determination by the trial judge." *Burlington Northern*, 63 F.3d at 1232, quoting *Parklane*, 439 U.S. at 326 (citation omitted).

[15] *Cf. Parklane*, 439 U.S.at 330-31 (recognizing that offensive collateral estoppel may encourage potential litigants to adopt a "wait and see" attitude, and concluding that "in cases where a plaintiff could easily have joined in the earlier action . . . , a trial judge should not allow the use of offensive collateral estoppel").

persons bound were actual parties to the prior litigation;[16] one in which parties were bound because they admitted privity;[17] one class action[18] and one quasi-class action;[19] and two cases involving representational standing (wherein the members were not bound to any result).[20] (Docket No. 14 at 8-10; No. 19 at 2 n.1). These cases do not support a finding of mutuality here.

On the other hand, at least one case has squarely rejected the proposition that membership in the NTPSA suffices to create mutuality with respect to the *NTPSA* litigation. *See Figueredo Castillo v. Arteta*, 2026 WL 1065806 (S.D.N.Y. 2026). There, as here, a Venezuelan habeas petitioner who had TPS sought to apply the *NTPSA* Declaratory Judgment to estop the Government from arguing that DHS's vacatur and termination of Venezuela's TPS were lawful. The court found it "difficult to distinguish [the petitioner's] theory of mutuality of parties from the doctrine of 'virtual representation' that the Supreme Court rejected in *Taylor v. Sturgell*, 553 U.S. 880, 900 (2008)." 2026 WL 1065806 at *5.[21] Finding the Petitioner's showing insufficient, and the reasoning of *Figueredo Castillo* persuasive, the Court concludes that the collateral estoppel sought here is "non-mutual".[22]

---

[16] *E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489, 496 (3d Cir. 1990) (finding "individuals who fully litigated their own claims" were bound by the result).

[17] *Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548 (9th Cir. 2003) (finding organization and its members in privity due to their judicial admissions to that effect).

[18] *Bolden v. State Police*, 578 F.2d 912, 919 (3d Cir. 1978) (class action consent decree binding where "all classes affected . . . were adequately represented").

[19] *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1083 n.18 (9th Cir. 2003) ("binding current members of an association to the results of prior litigation conducted by that association is considered especially appropriate when the litigation resembles a class action in substance, if not in form").

[20] *Students for Fair Admissions v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 200 (2023); *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928, 947 (D. Md. 2020).

[21] In *Taylor*, "[t]he Court cautioned that '[a]n expansive doctrine of virtual representation . . . would recognize, in effect, a common-law kind of class action,' which would impermissibly 'authorize preclusion based on identity of interests and some kind of relationship between parties and nonparties, shorn of the procedural protection' outlined in the Court's due-process cases and Federal Rule of Civil Procedure 23." *Figueredo Castillo*, 2026 WL 1065806 at *5.

[22] Petitioner has directed the Court's attention to *Iriarte Salcedo v. Hernandez*, 2026 WL 2641345 (W.D. Wash. Sept. 8, 2026) as "supplemental authority" in support of his TPS claim. (Docket No. 25). In *Iriarte Salcedo*, the Court held that a habeas petitioner who demonstrated *current* membership in the NTPSA was "a class member protected by the

That conclusion is fatal to Petitioner's position, as the Supreme Court recently reiterated that "nonmutual offensive issue preclusion is unavailable against the United States." *Trump v. CASA, Inc.*, 606 U.S. 831, 852 n.13 (2025), citing *United States v. Mendoza*, 464 U.S. 154, 155 (1984). As the Third Circuit explained in *Burlington Northern*,

> Following *Parklane*, the Court in *United States v. Mendoza*, 464 U.S. 154 (1984), limited the application of offensive non-mutual collateral estoppel by concluding that it could not be applied against the federal government. The Court reasoned that such a policy 'would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue.' *Id.* at 160.

*Burlington Northern*, 63 F.3d at 1232 n.7 (parallel citations omitted). Petitioner's sole response to this restriction is to cite and quote case law to the effect that "concerns of collateral estoppel against the government are 'for the most part inapplicable where mutuality is present.'" (Docket No. 14 at 8-9). But as discussed above, Petitioner is mistaken in supposing that mutuality is present here, and thus he is not entitled to relief predicated on collateral estoppel. Because Petitioner has not asserted any theory for relief with respect to his TPS other than collateral estoppel, the foregoing determination is fully dispositive of his TPS claims.[23]

**B. Petitioner Is Not Entitled to Pre-detention Notice and Hearing Due to Prior Humanitarian Parole**

On July 2, 2022 Petitioner was granted temporary parole under 8 U.S.C. § 1182(d)(5)(A), which permits such parole in DHS's discretion "on a case-by-case basis for urgent humanitarian reasons or significant public benefit". (Docket No. 18-1 at 1). The parole was short in duration,

[NTPSA Declaratory Judgment]", and therefore entitled to immediate release. *Id.* at *2. In so holding, the court followed a substantially similar case from the same district. *See Rozo v. Hernandez*, 2026 WL 746580 (W.D. Wash. Mar. 17, 2026). Because neither *Iriarte Salcedo* nor *Rozo* addresses the requirement of mutuality, they do not alter this Court's analysis of the collateral estoppel issue.

[23] The Court notes that even if Petitioner were to succeed in his claim that DHS's vacatur of the last previous extension of Venezuela's TPS was ineffective, that extension would, by its terms, have expired on October 2, 2026, thus ending any statutory proscription against detention pursuant to 8 U.S.C. § 1254a(d)(4).

expiring by its own terms on September 1, 2022.[24] (*Id.*). In his Petition, Petitioner originally asserted that the Government "unlawfully revoked his release under parole without any notice or opportunity to be heard." (Docket No. 6 at 3). However, after the Government submitted documentation of the parole's September 1, 2022 expiration date,[25] Petitioner refined his theory: "Without disputing that his parole has expired, [Petitioner] principally grounds his claim of unlawful re-detention in constitutional due process rights that require notice, with a showing of changed circumstances, and an opportunity to be heard prior to re-detaining him after a grant of parole." (Docket No. 19 at 6).

DHS's regulations implementing § 1182(d)(5)(A) state that parole of noncitizens within certain groups "would generally be justified", provided that they "present neither a security risk nor a risk of absconding". 8 C.F.R. § 212.5(b). Petitioner seizes on this language to argue that in granting him parole, DHS "necessarily determined that he posed neither a danger to the community nor a flight risk." (Docket No. 6 at 16).[26] From there, Petitioner argues that it was incumbent on the Government to establish changed circumstances (with respect to danger or flight risk) prior to re-detaining him. (*Id.* at 16-17). Petitioner contends that his situation is analogous to cases in which this Court has ordered immediate release rather than a bond hearing where habeas petitioners were re-detained after receiving a favorable bond hearing.

However, this Court does not consider an interviewing DHS official's presumed, implicit determination that a parolee does not present a danger or flight risk to be anything like an express,

---

[24] This self-expiration distinguishes the present case from *Fleurissaint v. Oddo*, No. 3:26-cv-01027 (W.D. Pa. Sept. 15, 2026), submitted by Petitioner as "supplemental authority" in support of his parole claim, wherein this Court ordered immediate release of a habeas petitioner who was arrested prior to expiration of his parole.

[25] *Cf.* 8 C.F.R. § 212.5(e) ("Parole shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized".)

[26] The Court notes that the quoted regulatory provision does not, by its express terms, require that all parolees be found to "present neither a security risk nor a risk of absconding" as a precondition to granting humanitarian parole.

on-the-record determination of an Immigration Judge conducting a bond hearing. The parole decision is *ad hoc*, informal and temporary. It is not made by a specialist.[27] The grant in the present case was literally entered by means of a rubber stamp. (Docket No. 18-1 at 1). The Court therefore doubts that the grant of a brief parole four years ago carries sufficient weight to require a material alteration in the process that would otherwise be due to a non-citizen being detained in connection with removal proceedings.

Moreover, the Court finds that requiring enhanced process for non-citizens who were previously granted humanitarian parole would be contrary to the statute and regulations governing such parole. 8 U.S.C. § 1182(d)(5)(A) provides that "when the purposes of such parole shall . . . have been served the [parolee] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." And 8 C.F.R. § 212.5(e) similarly provides that upon termination of parole the parolee "shall be restored to the status that he or she had at the time of parole." According the former parolee a step-up in due process rights (such as rights to pre-detention notice and hearing) would be at odds with the regulatory and statutory directives that the parolee's prior status "shall be restored", and that his case shall "be dealt with in the same manner as that of any other applicant for admission". Accordingly, this Court concludes that Petitioner is not entitled to any remedy predicated on his prior humanitarian parole.

Finally, Petitioner has recently received a bond hearing (as directed by this Court), at which he was found to present a flight risk. Absent a showing that the hearing was conducted in a constitutionally deficient manner, that finding supersedes any contrary implicit finding on which Petitioner's argument is founded.

---

[27] Section 212.5(a) lists some 13 categories of DHS officials who are authorized to grant parole under § 1182(d)(5)(A).

## III. CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's remaining claims, without prejudice. An appropriate Order follows.

Dated: October 9, 2026

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

cc/ecf: counsel of record